# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

```
_____
                                )
DAVID KEANE,                    )
                                )
                Plaintiff,      )
                                )
v.                              )        Civil Action
                                )        No. 24-10399-PBS
EXPEDITORS INTERNATIONAL OF     )
WASHINGTON, INC., and EXPEDITORS )
HONG KONG, LIMITED,             )
                                )
                Defendants.     )
_____)
```

## MEMORANDUM AND ORDER

August 22, 2024

Saris, D.J.

## INTRODUCTION

Plaintiff David Keane brings this action against his former employers, Expeditors International of Washington, Inc. ("Expeditors US") and Expeditors Hong Kong Limited ("Expeditors HK"), advancing Title VII and several state law claims arising out of the termination of his employment. For over twenty-five years, Keane worked as an account manager for Defendants. For the first twenty years of his employment, he resided and worked in Massachusetts as an employee of Expeditors US. In 2018, he relocated to Hong Kong, continuing to manage the same account for five more years. According to Keane, Defendants targeted him for termination based on his gender and national origin. Although most

1

of the alleged discriminatory conduct occurred in Hong Kong, the negotiation and execution of Keane's initial employment agreement occurred in Massachusetts. Both Defendants move to dismiss for lack of personal jurisdiction and under the doctrine of forum non conveniens. After hearing, the Court **ALLOWS** Defendants' motion to dismiss (Dkt. 23).

## FACTUAL BACKGROUND

Keane's complaint alleges the following facts, which at this stage the Court accepts as true. In 1998, Keane began working for Expeditors US at the company's office in Peabody, Massachusetts. Expeditors US is a Washington-incorporated entity with its principal place of business in Seattle, Washington. It is a Fortune 500 company that provides logistics services and supply chain solutions for clients, such as freight forwarding, vendor consolidation, and cargo insurance. As a Global Account Manager, Keane oversaw the rapid expansion of the account for Lenovo Group Limited, a Chinese technology enterprise. Based on his success with the Lenovo account, in 2016 the company asked Keane to relocate to Hong Kong to manage the account from abroad, which he declined. In early 2018, the company pressured Keane to accept the relocation, this time by threatening termination. Keane reached a mutual oral agreement with Expeditors US that his relocation overseas would be temporary until a replacement employee could be

found, at which time Keane would be reinstated to his job in the Massachusetts office.

In July 2018, while still living in Massachusetts, Keane signed a written employment agreement that set forth the terms for his relocation and job in Hong Kong. See Dkt. 25-1 ("2018 Agreement"). The 2018 Agreement offered Keane employment with "Expeditors International of Washington Inc. Regional Office –- North Asia" and included a Hong Kong choice of law provision and a Hong Kong forum selection clause. See id. at 2, 8. Keane signed the agreement, as did Allen J. Wang in his role as "Senior Vice President -- North Asia." Dkt. 25-1 at 8-9. In September 2018, Keane relocated to Hong Kong and began working at Expeditors HK. Expeditors HK is a wholly-owned subsidiary of Expeditors US, incorporated in Hong Kong and with its principal place of business in Hong Kong.

In 2019, after about one year of working in Hong Kong, Keane was accused by a co-worker of engaging in unethical business relationships with his client at Lenovo. After investigating, an in-house attorney determined that the accusation lacked evidence. Keane became frustrated that Expeditors HK failed to impose any disciplinary action on the co-worker who brought the false allegations against him. Four years later, on September 21, 2023, Keane attended a company-hosted dinner at a hotel in Hong Kong. After the dinner, Keane was notified of a sexual harassment

complaint made against him by a sales representative who was present at the dinner. She alleged that Keane had grabbed her arm and kissed her shoulder without her consent at the dinner.

On September 25, 2023, four days after the company dinner, Expeditors HK presented Keane with a revised employment agreement, which he signed. See Dkt. 25-2 ("2023 Agreement"). The new agreement changed the name of his employer to "Expeditors Hong Kong Limited" and added a provision that stated: "The Company [Expeditors HK] acknowledges that your employment with the Company commenced on 1 September 2018 and will recognize that date for the purpose of all service-related terms." See id. at 2. The 2023 Agreement also stated that it superseded and replaced the 2018 Agreement. See id.

In December 2023, Keane's supervisor informed him at a meeting in the Hong Kong office that his employment was terminated. Following his termination, Keane returned to Massachusetts, where he currently resides.

## PROCEDURAL BACKGROUND

In January 2024, Keane filed an EEOC complaint in Boston, Massachusetts. Keane received a "Notice of the Right to Sue" and timely filed a complaint in this Court. The crux of Keane's allegations is that Defendants "devised and implemented a covert program designed to clandestinely reduce headcount without resorting to layoffs," and it was this program that "dismantled

critical safeguards intended to prevent discriminatory practices and protect due process." Dkt. 1 at 2. Keane's complaint also alleges that Defendants engaged in a discriminatory pattern of terminating American employees from the Hong Kong office. See id. at 36. Keane alleges the following six counts in his complaint: (I) violation of Title VII of the Civil Rights Act against both Defendants; (II) breach of oral contract against Expeditors US; (III) breach of the 2018 Agreement against Expeditors US; (IV) breach of the 2023 Agreement against Expeditors HK; (V) interference with prospective business relations against both Defendants; and (VI) negligent infliction of emotional distress against both Defendants.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss for lack of personal jurisdiction. The plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over the defendant. See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). "Under the prima facie standard, the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008). Courts "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional

5

showing and construe them in the light most congenial to the plaintiff's jurisdictional claim." Id. (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002)) (cleaned up). In order to make a prima facie showing of jurisdiction, "the plaintiff ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts." Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995).

## DISCUSSION

### I.  Personal Jurisdiction

Defendants move to dismiss Keane's complaint on the grounds that the Court lacks personal jurisdiction. To establish personal jurisdiction over both Expeditors US and Expeditors HK, Keane "must meet the requirements of both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment." See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015).

"The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). "Because the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process, . . . a determination under

6

the long-arm statute is to precede consideration of the constitutional question." <u>SCVNGR, Inc. v. Punchh, Inc.</u>, 85 N.E.3d 50, 52 (Mass. 2017). Section 3(a) of the Massachusetts long-arm statute, upon which Keane relies, provides for the exercise of jurisdiction over a defendant when the cause of action at issue arises from its transaction of business in the Commonwealth. <u>See</u> Mass. Gen. Laws ch. 223A, § 3(a). To find jurisdiction pursuant to Section 3(a), "the facts must satisfy two requirements: 1) the defendant must have transacted business in Massachusetts, and 2) the plaintiff's claim must have arisen from the defendant's transaction of such business." <u>Sigros v. Walt Disney World Co.</u>, 129 F. Supp. 2d 56, 63 (D. Mass. 2001). The primary inquiry is "whether the defendant attempted to participate in the commonwealth's economic life." <u>United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.</u>, 960 F.2d 1080, 1087 (1st Cir. 1992).

Under the due process analysis, constitutional due process demands that the defendant must have sufficient contacts with the forum state such that exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. State of Wash.</u>, 326 U.S. 310, 316 (1945). Here, Keane makes no claim for general jurisdiction. <u>See</u> <u>Harlow v. Children's Hosp.</u>, 432 F.3d 50, 57 (1st Cir. 2005) (explaining that general jurisdiction requires defendants have continuous and systematic

contacts with the forum state). Therefore, the Court's analysis focuses on specific personal jurisdiction, which involves three elements: relatedness, purposeful availment, and reasonableness. Daynard, 290 F.3d at 60.

Under the relatedness element, courts consider whether the claim directly arises out of, or relates to, the defendant's forum state activities. See id. at 61. "[T]he defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case." Harlow, 432 F.3d at 61 (cleaned up). For breach of contract claims, courts look to whether "the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999). For tort claims, courts "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." Id.

Under the purposeful availment element, courts consider whether "the defendant's in-state contacts [] represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." Daynard, 290 F.3d at 60. "The two key focal points of this concept are voluntariness and foreseeability." Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007). Voluntariness requires that the defendant's contacts be

deliberate and "not based on the unilateral actions of another party." Id. Foreseeability requires that the contacts must be of a nature that the defendant could "reasonably anticipate being haled into court there." Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Finally, under the reasonableness element, "the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." Daynard, 290 F.3d at 60. The First Circuit considers the following Gestalt factors to assess reasonableness:

> (1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 69 (1st Cir. 2014) (quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994)). This part of the analysis "evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Ticketmaster, 26 F.3d at 210.

**A. Expeditors HK's Contacts**

Keane fails to establish a prima facie case of personal jurisdiction over Expeditors HK. Expeditors HK is a Hong Kong company registered to do business in Hong Kong and maintains a

principal office in Hong Kong. The Regional Vice President for Expeditors HK, Kaiser Lam, states in his affidavit that "Expeditors HK does not transact business in Massachusetts, did not contract to supply services or things in Massachusetts, does not regularly solicit business or engage in a persistent course of conduct in Massachusetts, and does not have an interest in using or possessing real property in Massachusetts." Dkt. 25 at 2. In contrast, Keane recalls that while he was employed at Expeditors HK, he "arranged some sales and deliveries to customers located in Massachusetts" and that "Expeditors HK had a revenue sharing agreement with Expeditors [US] regarding all air shipments from Hong Kong to Massachusetts." Dkt. 30 at 4; Dkt. 42 at 3.

Even assuming Expeditors HK arranged some shipments to Massachusetts, Keane's discrimination, breach of contract, and tort claims do not arise from those contacts. Instead, the factual allegations underpinning Keane's claims against Expeditors HK -- for example, the alleged discrimination against American foreigners, the company dinner party, the sexual harassment complaint, the investigation, the disciplinary hearing, and the resulting termination -- all occurred in Hong Kong, not Massachusetts. Keane has not met his burden under Section 3(a) of the Massachusetts long-arm statute because his causes of action do not arise from Expeditors HK's activities in Massachusetts. See Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 291

(D. Mass. 2017) ("[A] claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State."). Nor has Keane sustained his burden of establishing the relatedness element of the due process analysis.

In an attempt to connect Expeditors HK to Massachusetts, Keane argues that both "Defendants intentionally engaged with [Keane] while he was based in Massachusetts, with the aim of transferring him and the lucrative Lenovo account that he managed to Expeditors HK." Dkt. 29 at 10. However, as set forth in Keane's affidavit, it was Brian McGinnis, a director of Expeditors US, who approached Keane numerous times about relocating to Hong Kong and convinced him to sign the 2018 Agreement with "Expeditors International of Washington Inc. Regional Office -- North Asia." See Dkt. 30 at 2-3. The agreement was signed by Allen J. Wang in his role as "Senior Vice President -- North Asia." Dkt. 25-1 at 8. Keane does not identify any director or officer of Expeditors HK involved in the formation or negotiation of the 2018 Agreement.

Because Expeditors HK does not have the requisite minimum contacts with Massachusetts, the Court need not reach the reasonableness element. See Sawtelle, 70 F.3d at 1394 ("[W]e note that a failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness"). Keane has not carried his burden in showing that the Court could

properly exercise personal jurisdiction over Expeditors HK. Accordingly, the motion to dismiss with respect to Expeditors HK is **ALLOWED**.

### B. Expeditors US's Contacts

The Court next turns to analyze whether exercising jurisdiction over Expeditors US is proper under the Massachusetts long-arm statute and the Due Process Clause. Expeditors US maintains a facility in Peabody, Massachusetts, which at the time of Keane's employment had approximately 120 employees. Keane himself worked at this Massachusetts facility for nearly two decades. Brian McGinnis, a director of Expeditors US, approached Keane when he was living in Massachusetts and negotiated the 2018 Agreement that resulted in Keane's relocation to Hong Kong. Expeditors US's actions in Massachusetts therefore satisfy the transacting-business requirement under the long-arm statute. See Mass. Gen. Laws ch. 223A, § 3(a). By hiring employees and forming contracts in the state, Expeditors US also invoked the benefits and privileges of doing business in Massachusetts, thus satisfying the purposeful availment inquiry under the due process analysis.

To determine whether Keane's claims arise from the alleged in-forum activity, the Court considers each of the five claims brought against Expeditors US individually.[1] See Phillips Exeter,

---

[1] Count IV alleges breach of the 2023 Agreement and was brought against Expeditors HK only.

196 F.3d at 289 ("Questions of specific jurisdiction are always tied to the particular claims asserted."). Keane's three non-contract claims arise directly out of his allegedly wrongful termination and the investigation and disciplinary proceedings that preceded it. Specifically, the Title VII claim (Count I) alleges that Keane "was terminated from his employment due to his sex and/or national origin, in violation of Title VII of the Civil Rights Act." Dkt. 1 at 99. The interference claim (Count V) alleges that Expeditors US interfered with Keane's prospective business relations with clients by labelling him a "sex harasser" during their internal investigation and disciplinary proceedings. Id. at 111. And the claim of negligent infliction of emotional distress (Count VI) similarly alleges that Expeditors US subjected Keane to emotional distress by "falsely accusing [Keane] of sexual harassment, failing to conduct a fair investigation, unlawfully summarily dismissing him and publicizing the false allegations without just cause." Id. at 113. Given that the investigation, disciplinary hearing, and termination all occurred in Hong Kong, Counts I, V, and VI do not arise out of Expeditors US's forum state activities and are therefore dismissed for lack of personal jurisdiction under both the Massachusetts long-arm statute and the Due Process Clause. See Azumi LLC v. Lott & Fischer, PL, 621 F. Supp. 3d 219, 224 (D. Mass. 2022) (finding no jurisdiction under long-arm statute where claims did not arise from defendant's

purported connections to Massachusetts); Phillips, 530 F.3d at 27 (noting that plaintiff must demonstrate that all three jurisdictional elements under the Due Process clause are satisfied).

The inquiry is different, however, with respect to Keane's contract claims against Expeditors US (Counts II and III). Where the cause of action is an alleged breach of contract, the Court considers whether the defendant's activity in the forum state was "instrumental either in the formation of the contract or its breach." See Phillips Exeter, 196 F.3d at 289. In Adelson v. Hananel, the First Circuit affirmed a district court's finding of relatedness where the contract between the parties was formalized and entered into in Massachusetts, the forum state. 510 F.3d at 49. Here, both the alleged oral contract and the 2018 Agreement were negotiated and entered into while Keane was living in Massachusetts. Keane states that Brian McGinnis, a director of Expeditors US, targeted and pressured him into relocating to Hong Kong. Keane alleges that he eventually relented upon threat of termination and entered into a mutual oral agreement with Expeditors US. According to Keane, his "eventual return to his original position in the Massachusetts office was a fundamental component of the oral agreement." Dkt. 1 at 102. Keane and Expeditors US then negotiated and signed the 2018 Agreement, which set forth the terms of his employment in Hong Kong. Defendants

argue that the mere act of signing the agreement in Massachusetts was incidental to the overall formation of the agreement. However, the complaint alleges more than just the signing of the agreement in Massachusetts -- it alleges that Keane was pressured into relocating multiple times from 2016 to 2018 and that difficult negotiations were conducted in Massachusetts prior to the execution of the 2018 Agreement. See Adelson, 510 F.3d at 49 ("[N]othing could be more instrumental in the formation of a contract than the literal act of forming the contract itself."). The Court finds that Keane's contract claims against Expeditors US arise from and are related to Expeditors US's activities within the forum state. Therefore, both requirements of the Massachusetts long-arm statute have been met with respect to Counts II and III. The relatedness element of the due process analysis is also satisfied with respect to these counts.

### C. Reasonableness

The final question is whether exercising jurisdiction over Expeditors US with respect to Keane's contract claims is reasonable. A number of the Gestalt factors weigh in favor of a finding of reasonableness. First, Keane, who currently resides in Massachusetts, has a compelling interest in bringing his claim in the forum state. See Ticketmaster, 26 F.3d at 211 (noting that courts "accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience"). Second, there is

15

no unusual burden for Expeditors US, a domestic Fortune 500 company, to appear in a forum state where the company already operates a facility. Third, Massachusetts has an interest in adjudicating claims involving contracts negotiated and formed in the state. Thus, with respect to Counts II and III, Expeditors US's contacts with Massachusetts establish "minimum contacts" in such a manner that it does not "offend traditional notions of fair play and substantial justice" for Keane to bring his contract claims in the forum state. See Int'l Shoe, 326 U.S. at 316.

**D. Alter Ego Theory**

Finally, Keane alleges that Expeditors HK is subject to personal jurisdiction as Expeditors US's alter ego. In his complaint, Keane alleges that "Expeditors HK functions as an extension and alter ego of the US parent company" because "Expeditors HK shares common management with Expeditors [US] and the CEO of Expeditors is a director of Expeditors HK" and "Expeditors HK's management structure is so intertwined with Expeditors that they effectively operate as a single entity." Dkt. 1 at 7-8, 96. For example, Keane contends that Allen J. Wang serves as Senior Vice President of both Defendants, and that Jeffrey Dickerman serves as Vice President and General Counsel of both companies as well.

In general, courts "have presumed the institutional independence of parent and subsidiary when determining whether

16

jurisdiction may be asserted over the parent solely on the basis of the subsidiary's contacts with the forum." Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465 (1st Cir. 1990). The record reflects that Expeditors HK "maintains its own ledgers and accounting books; prepares its own business plans, payroll, budget and financial statements . . . and controls the decisions regarding hiring and firing of its employees." Dkt. 25 at 3. Besides pointing to the overlapping leadership of the companies, Keane offers no evidence to refute the fact that Expeditors US and Expeditors HK observe corporate formalities as distinct entities. See Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir. 1980) (holding that "allegations of interlocking directorates and stock ownership will not alone suffice" to support an alter-ego theory for jurisdictional purposes). Keane has not provided sufficient evidence upon which the Court could plausibly find jurisdiction over Expeditors HK.

## II. **Forum Non Conveniens**

Defendants also move to dismiss Keane's claims pursuant to the doctrine of forum non conveniens. "The doctrine of *forum non conveniens* . . . permits a court to dismiss a case because the chosen forum (despite the presence of jurisdiction and venue) is so inconvenient that it would be unfair to conduct the litigation in that place." Nandjou v. Marriott Int'l, Inc., 985 F.3d 135, 140 (1st Cir. 2021) (quoting Howe v. Goldcorp Invs., Ltd., 946 F.2d

944, 947 (1st Cir. 1991)). A dismissal on these grounds requires the plaintiff to file his suit in a more convenient forum in order to obtain relief. Id. As the party moving for dismissal, Expeditors US "bears the burden of showing both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." Imamura v. Gen. Elec. Co., 957 F.3d 98, 106 (1st Cir. 2020) (quoting Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000)).

First, the Court looks to whether Hong Kong provides an adequate alternative forum for this dispute. An adequate alternative forum exists when "(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." Id. (quoting Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 424 (1st Cir. 1991)). Here, Defendants are "amenable to process in Hong Kong because [they] conduct[] business in the country." Carpi Trading Corp. v. Bank Bumiputra Malaysia Berhad, 812 F. Supp. 1041, 1044 (N.D. Cal. 1993). Not only is Expeditors HK a Hong Kong-based company, but Expeditors US agreed to "submit to the non-exclusive jurisdiction of the Courts of the [Hong Kong Special Administrative Region]" for claims arising out of the 2018 Agreement or Keane's employment. Dkt. 25-1 at 8; see Contact Lumber Co. v. P.T. Moges

18

<u>Shipping Co.</u>, 918 F.2d 1446, 1450 (9th Cir. 1990) (affirming dismissal where defendants submitted to jurisdiction in alternative forum).

Keane argues that Hong Kong is not an adequate forum because its legal system does not allow for contingency fee arrangements and its discovery procedures are more restrictive than in the United States. However, such procedural differences are not sufficient for finding an alternative forum to be inadequate. <u>See Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 250-55 (1981) (holding that "dismissal on grounds of forum non conveniens may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery"). Keane also argues that Hong Kong courts are not appropriate due to political instability in the region. However, "[n]umerous courts . . . have found Hong Kong to be an adequate alternative forum for contract and tort disputes." <u>Easy Spirit LLC v. DBS Bank LTD</u>, No. 19-7290, 2019 WL 13133363, at *4 (C.D. Cal. Dec. 10, 2019) (listing cases) ("Plaintiff's descriptions of political unrest in Hong Kong do not demonstrate that the unrest has rendered the judicial system incapable of resolving Plaintiff's claim."). Thus, the Court finds that Hong Kong provides an adequate alternative forum to adjudicate Keane's contract claims.

In addition to an adequate available forum, "the defendant must show that the compendium of factors relevant to the private

and public interests implicated by the case strongly favors dismissal." Iragorri, 203 F.3d at 12. Relevant private interest factors include:

> the relative ease of access to sources of proof; availability [and cost] of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious[,] and inexpensive.

Imamura, 957 F.3d at 107 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). Here, the locus of injury is in Hong Kong. In his complaint, Keane alleges that Expeditors US breached the oral agreement and the 2018 Agreement by wrongfully terminating him, not conducting a fair disciplinary proceeding, and failing to reinstate him to his job in Massachusetts. The 2018 Agreement provides that Keane could be "dismissed without notice and payment" from the company for misconduct, which included "[v]iolation of any of the policies articulated in the Company's Codes of Conduct" and "[s]erious or persistent breach [] of any of the terms and conditions of employment." Dkt. 25-1 at 5. Thus, determining whether Defendants terminated Keane with or without cause is integral to adjudicating Keane's contract claims. The events leading up to Keane's termination all occurred in Hong Kong, including the alleged sexual harassment, the investigation, the disciplinary proceeding, and the termination itself. Although Keane argues, without support, that witnesses are located around

the world, the Court finds that the location of evidentiary sources is at the center of gravity of the events surrounding Keane's termination, which lies in Hong Kong.

Moreover, as explained above, because the Court does not have jurisdiction over Expeditors HK or Keane's non-contract claims against Expeditors US, Keane would have to pursue those claims in Hong Kong. There is a benefit to resolving Keane's contract claims in the same forum and proceeding as his other claims, not only to avoid inconsistent findings or rulings, but also to save litigants the expense of parallel proceedings.

The public factors also weigh in favor dismissal. Relevant public factors include:

> the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Imamura, 957 F.3d at 107 (quoting Piper, 454 U.S. at 241). Here, the 2018 Agreement is expressly governed by Hong Kong law. See Dkt. 25-1 at 8 ("This agreement and your employment shall be governed by and construed in accordance with the laws of the Hong Kong Special Administrative Region (HKSAR)."). In general, there is a preference for a forum to apply laws with which it is familiar. See Dow Jones & Co. v. Juwai Ltd., No. 21-7284, 2023 WL 2561588,

at *11 (S.D.N.Y. Mar. 17, 2023) ("While this Court can address questions of Hong Kong law, Hong Kong courts are plainly better suited to the task. This alone is a strong -- though not dispositive -- factor favoring dismissal."). Finally, although the contracts at issue were executed in Massachusetts, Hong Kong has a greater interest in resolving what is, at its core, an employment dispute involving a Hong Kong employee and a Hong Kong company.

In summary, Defendants have met their burden of showing that Hong Kong is an adequate alternative forum for Keane's claims, and the balance of private and public interest factors weigh in favor of adjudication in a foreign forum. Although deference is given to Keane's preference for his home forum, Hong Kong is the more appropriate and convenient forum for adjudicating the dispute in its entirety. Accordingly, Keane's contract claims against Expeditors US (Counts II and III) are dismissed on the ground of forum non conveniens.[2]

## ORDER

For the reasons stated above, the Court **ALLOWS** the motion to dismiss all claims against Expeditors HK for lack of personal jurisdiction. The Court also **ALLOWS** the motion to dismiss Counts I

---

[2] After the motion to dismiss hearing, both parties filed supplementary briefing regarding Keane's intention of seeking leave to amend his complaint to add a Racketeer Influenced and Corrupt Organizations ("RICO") Act claim and a promissory estoppel claim. See Dkts. 51, 54. Since the action is dismissed in its entirety, the Court need not address these arguments.

(Title VII claim), V (interference with prospective business relations), and VI (negligent infliction of emotional distress) against Expeditors US for lack of personal jurisdiction. Finally, the Court **ALLOWS** the motion to dismiss Counts II (breach of oral contract) and III (breach of 2018 Agreement) against Expeditors US on the ground of forum non conveniens.

SO ORDERED.

                                    /s/ PATTI B. SARIS
                                    Hon. Patti B. Saris
                                    United States District Judge